# UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DOMINGO BUSTOS ANAYA, | 1:08-cv-00287 OWW DLB HC |
| Petitioner, | FINDINGS AND RECOMMENDATION REGARDING RESPONDENT'S MOTION TO DISMISS THE PETITION |
| v. | |
| | [Doc. 11] |
| D.K. SISTO, | |
| Respondent. | |

Petitioner is a state prisoner proceeding pro se with a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254.

## BACKGROUND

Petitioner is currently in the custody of the California Department of Corrections and Rehabilitation following a conviction for murder.  He was sentenced to an indeterminate state prison term of twenty-nine years to life.  (Lodged Doc. No. 1.)

The California Court of Appeal, Fifth Appellate District, affirmed Petitioner's conviction on November 23, 1999.  (Lodged Doc. No. 2.)

The California Supreme Court denied review on February 16, 2000.  (Lodged Doc. Nos. 3-4.)

Thereafter, Petitioner filed three pro se state post-conviction collateral petitions.  The first petition was filed on October 17, 2006, in the Stanislaus County Superior Court, which was denied on October 25, 2006.  (Lodged Doc. Nos. 5-6.)

1    The second petition was filed in the California Court of Appeal, Fifth Appellate District
2 on February 28, 2007. (Lodged Doc. No. 7.) The petition was denied on March 22, 2007.
3 (Lodged Doc. No. 8.)
4    The third and final state petition was filed in the California Supreme Court on April 20,
5 2007, and denied on January 23, 2008. (Lodged Doc. Nos. 9-10.)
6    The instant federal petition for writ of habeas corpus was filed on February 11, 2008.
7 (Court Doc. 1.) Respondent filed the instant motion to dismiss on May 5, 2008. (Court Doc.
8 11.) Petitioner filed an opposition on June 12, 2008, and Respondent filed a reply on August 26,
9 2008. (Lodged Doc. Nos. 18, 25.)

## DISCUSSION

### A. Procedural Grounds for Motion to Dismiss

Rule 4 of the Rules Governing Section 2254 Cases allows a district court to dismiss a petition if it "plainly appears from the petition and any attached exhibits that the petitioner is not entitled to relief in the district court . . . ." Rule 4 of the Rules Governing Section 2254 Cases.

The Ninth Circuit has allowed respondents to file a motion to dismiss in lieu of an answer if the motion attacks the pleadings for failing to exhaust state remedies or being in violation of the state's procedural rules. See e.g., O'Bremski v. Maass, 915 F.2d 418, 420 (9th Cir. 1990) (using Rule 4 to evaluate motion to dismiss petition for failure to exhaust state remedies); White v. Lewis, 874 F.2d 599, 602-03 (9th Cir. 1989) (using Rule 4 as procedural grounds to review motion to dismiss for state procedural default); Hillery v. Pulley, 533 F.Supp. 1189, 1194 & n.12 (E.D. Cal. 1982) (same). Thus, a respondent can file a motion to dismiss after the court orders a response, and the Court should use Rule 4 standards to review the motion. See Hillery, 533 F. Supp. at 1194 & n. 12.

In this case, Respondent's motion to dismiss is based on a violation of 28 U.S.C. 2244(d)(1)'s one-year limitations period. Therefore, the Court will review Respondent's motion to dismiss pursuant to its authority under Rule 4.

### B. Limitation Period for Filing a Petition for Writ of Habeas Corpus

On April 24, 1996, Congress enacted the Antiterrorism and Effective Death Penalty Act

of 1996 (AEDPA).  The AEDPA imposes various requirements on all petitions for writ of habeas corpus filed after the date of its enactment.  Lindh v. Murphy, 521 U.S. 320, 117 S.Ct. 2059, 2063 (1997); Jeffries v. Wood, 114 F.3d 1484, 1499 (9th Cir. 1997) (en banc), *cert. denied,* 118 S.Ct. 586 (1997).  The instant petition was filed on February 11, 2008, and thus, it is subject to the provisions of the AEDPA.

The AEDPA imposes a one year period of limitation on petitioners seeking to file a federal petition for writ of habeas corpus.  28 U.S.C. § 2244(d)(1).  As amended, Section 2244, subdivision (d) reads:

> (1)  A 1-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court. The limitation period shall run from the latest of –
>
> (A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;
>
> (B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;
>
> (C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
>
> (D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.
>
> (2) The time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection.

In most cases, the limitation period begins running on the date that the petitioner's direct review became final.  Here, the Petitioner was convicted on September 15, 1997.  The petition for review was denied by the California Supreme Court on February 16, 2000.[1]  Thus, direct review would conclude on May 17, 2000, when the ninety (90) day period for seeking review in the United States Supreme Court expired.[2]  Barefoot v. Estelle, 463 U.S. 880, 887 (1983); Bowen

---

[1] Cal. R. Ct. 8.532(b)(2) providing that an order of the Supreme Court denying a petition for review of a decision of a Court of Appeal becomes final when it is filed.

[2] See U.S. Sup.Ct. R. 13(1)

v. Roe, 188 F.3d 1157, 1159 (9th Cir.1999) (concluding period of "direct review" includes the period within which one can file a petition for a writ of certiorari in the United States Supreme Court); Smith v. Bowersox, 159 F.3d 345, 347 (8th Cir.1998).  Petitioner would have one year from May 17, 2001, absent applicable tolling, in which to file his federal petition for writ of habeas corpus.  See Patterson v. Stewart, 251 F.3d 1243, 1245 (9th Cir. 2001) (holding that Rule 6(a) of the Federal Rules of Civil Procedure governs the calculation of statutory tolling applicable to the one year limitations period.)

C.      Tolling of the Limitation Period Pursuant to 28 U.S.C. § 2244(d)(2)

Title 28 U.S.C. § 2244(d)(2) states that the "time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward" the one year limitation period.  28 U.S.C. § 2244(d)(2).  In Nino v. Galaza, the Ninth Circuit held that the "statute of limitations is tolled from the time the first state habeas petition is filed until the California Supreme Court rejects the petitioner's final collateral challenge."[3]  Nino v. Galaza, 183 F.3d 1003, 1006 (9th Cir. 1999), *cert. denied,* 120 S.Ct. 1846 (2000); see also Taylor v. Lee, 186 F.3d 557 (4th Cir. 1999); Barnett v. Lemaster, 167 F.3d 1321, 1323 (10th Cir. 1999).  The Court reasoned that tolling the limitations period during the time a petitioner is preparing his petition to file at the next appellate level reinforces the need to present all claims to the state courts first and will prevent the premature filing of federal petitions out of concern that the limitation period will end before all claims can be presented to the state supreme court.  Id. at 1005.  The limitations period, however, will not toll for the time a petition for writ of habeas corpus is pending in federal court.  Duncan v. Walker, 533 U.S. 167 (2001).  Here, the first through third state post-conviction petitions do not qualify to toll the limitations period, because the first petition was not filed until October 17, 2006, well after the statute of limitations expired.  Because the limitations period had already

---

[3] In California, the Supreme Court, intermediate Courts of Appeal, and Superior Courts all have original habeas corpus jurisdiction. See Nino 183 F.3d at 1006, n. 2 (9th Cir. 1999).  Although a Superior Court order denying habeas corpus relief is non-appealable, a state prisoner may file a new habeas corpus petition in the Court of Appeal.  Id.  If the Court of Appeal denies relief, the petitioner may seek review in the California Supreme Court by way of a petition for review, or may instead file an original habeas petition in the Supreme Court.  See id.

expired, the collateral challenge had no tolling consequence. Jiminez v. Rice, 276 F.3d 478, 482 (9th Cir. 2001); Green v. White, 223 F.3d 1001, 1003 (9th Cir.2000) (Petitioner is not entitled to tolling where the limitations period has already run); see also Webster v. Moore, 199 F.3d 1256 (11th Cir.2000); Rendall v. Carey, 2002 WL 1346354 (N.D.Cal.2002).

D.   Later Start of Limitations Period Under § 2244(d)(1)(D)

Petitioner contends that he is entitled to a later start of the one-year limitations period under 28 U.S.C. § 2244(d)(1)(D), because the factual predicate of his claim was not discovered until March 2005.

Here, Petitioner contends that the District Attorney failed to timely disclose the tape of an interview between informant Uriel Valencia and a district attorney investigator on December 5, 1996, and the tape recording of an interview of Valencia by a Ceres Police Department detective on November 7, 1996. Petitioner contends that he was not aware of the existence of the tapes until March 14, 2005, when his trial attorney forwarded the prosecutor's letter dated August 10, 2000, concerning the tapes. (Petition, at 20, 68-73.)

The record discloses that years after Petitioner's trial, as the Deputy District Attorney was going through his file, he discovered two tape recordings. The December 5, 1996, tape was marked as a "copy" of an interview of informant Uriel Valencia by District Attorney Investigator Al Fontes. (Petition, at p. 68 of 153, part 2.[1]) The second tape was an interview of Valencia by Detective McGill on November 7, 1996. (Id.)

Respondent argues that both Petitioner and trial counsel were aware of the existence of the November 7, 1996, taped interview and quotes trial counsel's March 14, 2005, letter, which states "Neither you nor I were *unaware* of the November 7th tape recording prior to the 1997 trial." (Id.) (Emphasis added.) Even if counsel and Petitioner were aware of the existence of the tape recording of the November 1996 interview, it clear from counsel's letter that they were unaware of the substance in the tape. This is so as counsel states in his March 2005 letter, "[b]ecause we did not know that Valencia had told Officer McGill that the motive for the

---

[1] The page numbers referenced to the Petition are as they appear on the Court's Case Management Electronic System.

5

shooting was because the victim had supposedly made an attempt on one of your relative's life, I was unable to question Uriel Valencia about this, and to ask him about his inconsistent statements." (Id.) Counsel pointed out that Officer McGill prepared a written report of the interview but did not provide Valencia's explanation as to the motive for the shooting. (Id.) This finding is further substantiated by the Stanislaus County Superior Court's order denying Petitioner's petition for writ of habeas corpus, which notes, in relevant part:

> There is only one noticeable variance between the informant's testimony at trial and the taped/transcribed statements made in his pre-trial interviews with Detective McGill and Investigator Fontes. In the McGill interview, the informant said that [Petitioner] told him in substance that they (the authorities) thought that it (the murder) was about roses, but it was actually because the victim had been involved in attack against a relative of [Petitioner]. In the Fontes interview and at trial, the informant testified that [Petitioner] had told him (in essence) that they thought it was about roses but it was about something else. The informant testified that [Petitioner] did not tell him what the real reason was.

(Lodged Doc. No. 6, Opinion, at ¶ 2.)

Nonetheless, even if Petitioner did not discover the factual predicate for his claim concerning the taped interview on November 7, 1996, until advised by counsel in the March 14, 2005, letter, the instant petition is still untimely. As Respondent correctly argues, even giving Petitioner the benefit of the doubt, the limitations period commenced with a few days of March 14, 2005, and the limitations would have concluded some time in March 2006. Petitioner did not file his first state collateral petition until October 17, 2006, well over a year after the discovery of the factual predicate for his claim.

With regard to the transcript of the tape recording of the December 5, 1996 interview, the record is unclear as to whether defense counsel or Petitioner were aware of its existence. Respondent initially argues that there is no evidence that the tape was not provided to Petitioner during trial, as the prosecutor merely expressed concern of its disclosure due to the lack of a discovery stamp on it. Further, in his March 14, 2005, letter defense counsel did not indicate whether a copy of the tape was provided prior to or during trial. (Petition, at p. 68, part 2.) Respondent further argues that the transcript of this interview did not provide a new factual predicate to Petitioner's claim. The Court agrees with Respondent on this point. As stated by

6

the Stanislaus County Superior Court, "[i]n the Fontes interview [on December 5, 1996] and at trial, the informant testified that [Petitioner] had told him (in essence) that they thought it was about roses but it was about something else. The informant testified that [Petitioner] did not tell him what the real reason was." (Lodged Doc. No. 6, Opinion, at ¶ 2.) Thus, Valencia's statement during the interview was consistent with his trial testimony and there is simply no basis upon which he could have been impeached. As Respondent correctly argues, the December 5, 1996, interview tape did not provide a new factual predicate, but was merely further evidence in support of Valencia's trial testimony and therefore provides no basis for a later start of the limitations period under 28 U.S.C. § 2244(d)(1)(D).

E.      Equitable Tolling

The limitations period is subject to equitable tolling if the petitioner demonstrates: "(1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way." Pace v. DiGuglielmo, 544 U.S. 408, 418 (2005); see also Irwin v. Department of Veteran Affairs, 498 U.S. 89, 96 (1990); Calderon v. U.S. Dist. Ct. (Kelly), 163 F.3d 530, 541 (9th Cir. 1998), citing Alvarez-Machain v. United States, 107 F.3d 696, 701 (9th Cir. 1996), cert denied, 522 U.S. 814 (1997). Petitioner bears the burden of alleging facts that would give rise to tolling. Pace, 544 U.S. at 418; Smith v. Duncan, 297 F.3d 809 (9th Cir.2002); Hinton v. Pac. Enters., 5 F.3d 391, 395 (9th Cir.1993).

Petitioner contends that he is entitled to equitable tolling based on the fact that he did not receive his state court file until July 1, 2006 and that he is not proficient in the English language.

Respondent argues that even assuming that Petitioner did not learn of the factual predicate of his claim until March 14, 2005 and did not receive his transcripts until July 2006, he has failed to demonstrate that he proceeded with due diligence. In opposition, Petitioner attaches a copy of a letter from the California State Bar, dated March 29, 2005, which provided Petitioner with the name and address of his appellate attorney; a letter from his appellate counsel, dated April 13, 2005, in which counsel indicated that he would forward the letter to counsel's former employer to assist in obtaining a copy of the transcripts; and, a letter, dated September 27, 2005, from the California State Bar. (Opposition, at pp. 17, 18; Petition, at p. 88, part 2.)

Even assuming (without deciding) that the transcripts were a necessary prerequisite to the filing of a collateral petition, Petitioner fails to demonstrate the exercise of due diligence, a necessary requirement for equitable tolling. Petitioner does not demonstrate what action was taken after receipt of the September 2005 letter. Indeed, Petitioner does not indicate what, if any, further action was taken to obtain a copy of his transcripts. The lack of such information, supports the finding that Petitioner was not proceeding in a diligent fashion in attempting to pursue his federal claims.

With regard to Petitioner's claim that his lack of proficiency in the English language was a barrier to the filing of a timely petition, his allegations fails to rise to the level of entitlement to equitable tolling. A petitioner's language barrier does not justify equitable tolling unless it actually prevented the timely filing. See Mendoza v. Carey, 449 F.3d 1065, 1069 (9th Cir. 2006) ("[A] non-English-speaking petitioner seeking equitable tolling must, at a minimum, demonstrate that during the running of the AEDPA time limitation, he was unable, despite diligent efforts, to procure either legal materials in his own language or translation assistance from an inmate, library personnel, or other source [fn]."); see also Diaz v. Kelly, 515 F.3d 149, 154 (2d Cir. 2008).

It was incumbent upon Petitioner to exercise due diligence in attempting to pursue relief, despite his lack of proficiency in the English language. Although Petitioner states in vague and conclusory terms that he is "a Mexican National, [E]nglish language deficient (requiring a translator at trial), indigent, legalize illiterate, pursued his 'new evidence' matter as diligently as could be. Incarcerated at Solano State Prison, he made several trips to the law library but found only [E]nglish speaking clerks and librarians. [Petitioner] was unable, despite 'due diligence' to procure either legal materials in his own language or translation assistance from an inmate, library personnel or other source." (Opposition, at 11.) Petitioner goes on to state that he managed to submit a letter to the California State Bar on March 24, 2005, who responded by letter on March 29, 2005. On April 10, 2005, Petitioner then wrote a letter to his former appellate attorney, who responded on April 13, 2005. (Id. at 12.) Then in September 2005, he wrote a second letter to the California State Bar complaining about not receiving his file from his

former appellate attorney. The Bar responded by letter on September 27, 2005, which stated:

> You have complained that Carver Clark Farrow [former appellate counsel] has been discharged and not returned your documents to you. Your complaint concerns us. However, it is hoped that bringing your complaint to the attorney's attention will resolve this matter.
>
> We have advised the attorney to contact you within ten (10) working days from the date of this letter, regarding the availability of your client file. Under the Rules of Professional Conduct, the attorney is not required to mail or deliver the file to you. Whether your, or a designee, pick up the file from the attorney's officer or the attorney mails the file to you, is a decision to be made between you and the attorney.
>
> Should the attorney fail to contact you within the specified time, please recontact the State Bar. At that time, we will determine if further action is needed.
>
> At this time, your complaint file is being closed, without prejudice.

(Opposition, at 18.)

Petitioner states that the Bar "would continue to assist" and he received his records on or about July 15, 2006. Contrary to Petitioner's contention, the Bar stated that if the attorney did not contact him within ten (10) working days, he should recontact them, and his complaint file was being closed, without prejudice. Petitioner provides no indication of any further contact with the state bar, despite not receiving his records until almost ten months later, and Petitioner simply does not allege with any specificity what actions he pursued to diligently file his federal petition. Indeed, he fails to indicate what action, if any, he sought to seek assistance with his language barriers. He could have contacted someone inside or outside of the prison and there is simply no indication that he attempted to do so. Accordingly, the Court cannot find that Petitioner's language barrier prevented him from filing a timely petition.

## RECOMMENDATION

Based on the foregoing, it is HEREBY RECOMMENDED that:

1. Respondent's motion to dismiss the instant petition as time-barred under § 2244(d)(1) be GRANTED; and,

2. The instant petition for writ of habeas corpus be DISMISSED, with prejudice.

This Findings and Recommendation is submitted to the assigned United States District Court Judge, pursuant to the provisions of 28 U.S.C. section 636 (b)(1)(B) and Rule 72-304 of

the Local Rules of Practice for the United States District Court, Eastern District of California. Within thirty (30) days after being served with a copy, any party may file written objections with the court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Replies to the objections shall be served and filed within ten (10) <u>court</u> days (plus three days if served by mail) after service of the objections. The Court will then review the Magistrate Judge's ruling pursuant to 28 U.S.C. § 636 (b)(1)(C). The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order. <u>Martinez v. Ylst</u>, 951 F.2d 1153 (9th Cir. 1991).

IT IS SO ORDERED.

Dated:   **October 4, 2008**              /s/ **Dennis L. Beck**
                                    UNITED STATES MAGISTRATE JUDGE